Good morning, Your Honors. Robert Wallin, Pillsbury Winthrop. I represent appellants. How are you? Fine, Your Honor. Thank you. The Bankruptcy Court concluded on the record in its statement that California Civil Code Section 47 applied and outweighed Mr. Marconi's fiduciary duties as a debtor in possession and any duties of candor that applied to Mr. Rosen. We submit that Section 47 and the California case law interpreting that statute do not support the Court's decision. Why shouldn't this question be certified to the California Supreme Court? It involves purely a question of California law as far as I can tell, the litigation privilege and what it means. And there's some confusion in California law. I've read everything twice and it's not crystal clear. Is this a case for certification? It could be, however, Your Honors. Your Honor, I did submit this morning and have to indicate to the Court that while preparing for this argument over the weekend, I did more research to see if I could find more case law out there. In fact, I did find a case which I've submitted this morning. Is that Barden v. Lockheed? Yes, Your Honor. Before we get to that argument, the argument as to which there seems to be some confusion in the California courts, there are some threshold issues we have to address. One is there's a challenge to the standing of your client by virtue of the fact that in the designation of your client, there's no reference to the appeal of this manner. And in response to that, you point to the provisions which give your client the right to collect gather and collect assets. Is that correct? Well, I think more than that, Your Honor. What else? A creditor's committee does not have independent rights. A creditor committee's rights are solely derivative of the rights of the estate. So when the creditor committee pursues a right of the estate, it is, in fact, pursuing the estate's rights. That's what it was doing below. And the right that you're seeking, ultimately, this is all preliminary to a suit against Marconi for fraudulent conveyance. That's correct, Your Honor. Which is a tort action. That's correct, Your Honor. All right. So you make this dichotomy between a contract action and a tort action, but this is really all this immediate proceeding is just preliminary to the commencement of a tort action. Is that correct? That's correct, Your Honor. Now, you could have done it in one suit, could you not? You could have sued Marconi for fraudulent conveyance, and by way of anticipatory rebuttal or in response to an action to dismiss on the grounds of release, you would have urged that the release was procured by fraud. We would have one suit then, would we not? I think procedurally the way that the matter was presented is that there was a binding term sheet that contained many provisions, not simply the issue of a future release. It contained a number of provisions with respect to the plan. Were they all executed, the term sheet? Was it executed? Partly executed, Your Honor. What remained to be done? All right. It's a several-page document, and I would have to go through each item. I could identify which has been completed and which has not. I ask that because you describe this action as an action for rescission, which resonates nicely in contract. But pursuant to the term sheet, Mr. Marconi was to yield control, give up control. That's correct, Your Honor. Were the releases actually given to him? No, Your Honor. They have not. So you're suing to prevent the releases being given? Your Honor, I believe it is Mr. Marconi's position that he in fact has a release. It is our position that the agreement was essentially an agreement to do many things and to later provide a release. What's key is that one of the releases, and the release that I think should be focused on, is that there was a release from the debtor itself, that is, from Mr. Marconi's debtor in possession, essentially releasing himself. But your position, if I understand it, please, I'm just trying to make sure I understand, is that although the motivating factor here is the bringing of a tort action, because you stop short of asserting that, it is therefore a contract action and the privilege is inapplicable. The Barden decision, Your Honor, and we believe California Supreme Court authority to date supports our position that we still have a distinction in this State between contract remedies and tort remedies. Is there an awful pleading rule with respect to the privilege that one would look to the substance of the action rather than the description given by counsel? Your Honor, I think that we had a right, that is, the creditor committee and then the creditor trust, as it's ultimately is the position of the party that is acting on behalf of the State, had a right to exercise a contract remedy to set aside a contract, and the term sheet was a contract that was approved by the Court. But you couldn't restore status quo, could you? Could we restore 100 percent of status quo? The decision usually calls for a cancellation and a restoration of the status quo. Usually, but not always, Your Honor. Usually, but not always. Just as long as I've interrupted you so much, let me ask one other question. You or your client told the bankruptcy judge that an action against Murphy or Rosen would be barred by the privilege. A tort action against an opposing counsel, I think, runs into the privilege. I think there is an argument that could be made. We have not made it. There is an argument that could be made that the debtor, as such, could sue its own professionals for malpractice. But that's not what we're dealing with here. There are those cases. But in any event, the bankruptcy judge was told that a suit against Murphy and Rosen would be barred by the privilege. You also urged that although they were not nominally counsel for Marconi, what they said is can be used against Marconi. Yes. Simultaneously, Your Honor, Mr. Rosen was representing Mr. Marconi personally in relation to the same issues. Mr. Marconi was the debtor in possession. He was the president of the company. And Mr. Rosen had to respond to Mr. Marconi. So the privilege would be a defense to the lawyer who made the statements, but not to the client on whose behalf those statements were made. Two issues to that, two responses to that, Your Honor. First, I think under Rule 60B, 60B-3 of the Federal Rules of Civil Procedure, it's not clear to me that Section 47 could actually serve as a bar to the contract remedy that's here with respect to the question of whether we could assert a tort cause of action against Mr. Rosen, excuse me, for making a misstatement. I think it has to be answered one of two ways. If he is viewed as opposing counsel, then I think that the litigation privilege would stand. I couldn't sue my opposing counsel in a case for making some sort of a misstatement. Did you sue his client? I can seek contract remedies against his client for a misstatement that's made. Yes, Your Honor. Look, we're not looking for a contract remedy yet. The only purpose of this exercise is to lay the groundwork for a tort action. The purpose is to set aside the binding term sheet, which has a number of obligations that flow in both directions, and to terminate the continuation of those obligations. One of the provisions is a release that has not yet been given, but is in debate at this point as to whether, in fact, there is something that calls for a release. If, indeed, there is no release, there is the ability, excuse me, of the creditor trust standing in the shoes of the trustee of the bankruptcy estate to pursue fraudulent transfer actions. And your ultimate objective is what? Reel money back into the estate? The defendants, Mr. Marconi, took about $50 million, $40 to $50 million of borrowed funds out of the estate and put that company into bankruptcy in very short order thereafter. And the representation that was made, which is admitted in all of the papers that have been filed by the other side, there is an admission that Mr. Rosen misstated the facts. There was no wild-gotcha opinion letter. But that misrepresentation What I'm hearing you say is you represent the estate. Yes, Your Honor. And your objective is to do what on behalf of the estate? Maximize the recovery for the creditors. Reel money back into the estate. That's correct, Your Honor. That's the essence of your standing argument. The essence of my standing argument is that there's a two-part issue with respect to standing. The first question is whether the creditor trust currently has the rights and can pursue the appeal of the challenge that was initiated by the creditors' committee. And our position in response to that is absolutely because a creditor committee has no rights that are not the estate's rights. Those are the estate's rights. And the transfer in the bankruptcy plan conveys all of the estate's rights, including quite expressly the shareholder litigation was transferred under the bankruptcy plan to the creditor trust, which is what I represent. In between the rock and the hard place, if you bring the suit, which is the only reason for the exercise to recover funds from Marconi for fraudulent conveyance, that's a tort action. And the stichotomy that you draw between contract and tort actions would not be availing. If you fall short of that and just bring the first step, then you're faced with the argument your adversaries make is that you have no standing to do that. Well, I think I should also add, Your Honor, that the document that is in issue on this appeal does not eliminate all actions and it does not eliminate all fraudulent transfer actions. There has been pending a case currently in the bankruptcy court. It was initially filed in State court for fraudulent transfers. There are many other defendants. But the privileges are relevant in those cases, yes? In those cases because they are outside of the scope of the specifics of the term sheet. So the term sheet does not eliminate all fraudulent transfer actions. So the question of whether there will be tort actions can be answered in that there already is a pending tort action, extensive discovery, and we're approaching time when the case is going to be ready for trial. The question is that there is a specific carved out area within the term sheet that if the would be a carve out and it would serve as a defense. In addition to that, there are many other provisions in the term sheet that would come into play. Indemnity questions, there are indemnity provisions in the term sheet as well. I would like to answer. I have a question. What does Barden v. Lockheed hold? Barden v. Lockheed specifically says, and I quote, the litigation privilege was never meant to spin out from judicial action a party's performance and course of conduct under a contract. In the Barden case, there was a contract involving. What does that mean? You've quoted a sentence out of context, so an unconnected sentence, which is not what your He wants to know, as I understand it, what does this case stand for? And you give us a quote, a sentence, an unconnected sentence in the middle of a case. What's the case about? The case involves a question. It involves two questions, but the question under Section 47 involves a question as to a trial court's ruling that Section 47 prevented a contract claim from being asserted. And Justice Epstein concluded, no, Section 47 does not extend to contract claims. There was a dispute, a question then about whether that contract claim had been released. And the Court found that the contract in question indeed was a release, that in that particular case, the release itself had not been procured by fraud. There was no allegation of procurement by fraud. The Court specifically pointed. So this is a case of dicta? No, Your Honor. No? No, it is not a case of dicta, Your Honor. Well, it sounds like dicta. It sounds like this is a case where the release was upheld, and all the way Justice Epstein applying that, yes, it would apply to that. No, Your Honor. In the context. What the Court specifically did is it said that the trial court erred by extending Section 47 to cover a contract claim. The Court found. The Court found anyway. It said it could affirm on a different basis, and that is what it did. This case is at least five years old. Why are you giving it to us now? Your Honor, four law firms on both sides studied this issue, briefed it extensively. I have no excuse. I did research this. Well, we don't know whether the other side found it or not. I advised them of it over the weekend. Number one. And number two, why don't you give us a copy of the case? I mean, give us a single piece of paper. So some rule says you can't give us a copy of the case. Yes. So we know what you're talking about. I do have a copy of the case, Your Honor. I am concerned that there was a rule that said I couldn't do so. The specific handout. Why didn't you alert the other side to the existence of this case? The day that I found out about it, Saturday. What's the rule you're talking about? The material that the Court sends out to the parties when a case is being set. It indicates that the only form that can be used is the form that I submitted to the Court this morning, that it can contain no arguments or anything else. I read that to mean that I could not submit anything beyond this. I actually did prepare a letter under the rule, a one-page letter, which briefly explained the case. I provided that to counsel over the weekend. I read further and realized that this form was the only form that I could use. I do have an extra copy of the case. I did alert counsel to it on Saturday. You know, it's not impressive to get a five-year-old case on the morning of argument that you say really answers all the issues in it. Back to my earlier question. Why not certification? If the Barden decision answers the question. It's a court of appeals case. Yes. I appreciate it, Your Honor. If this Court believes that the Barden case is on point, it could follow it and it need not look to the California Supreme Court. If this Court believes that there really is a dispute in California law as to whether the Section 47 extends to contract claims, if the Court believes there is that dispute, then certification to the California Supreme Court would be in order. Then that would take it. Okay. We'll give you a few minutes. Thank you, Your Honor. We'll hear from the other side. They keep turning us down on certification. It's on certification. Good morning, Your Honors. May it please the Court. I'm Mark Frazier, along with my colleague, Matthew Grimshaw. Did you know about Barden v. Lockheed? I did not until Saturday, Your Honor. That's not impressive either, but go ahead. Well, Your Honor, I don't believe that it applies in this case, and let me explain why. I think as the Court, as members of the Court have recognized, there is a difficult position taken by the appellant in this case. On the one hand, it admits that it's suing on misrepresentations that will lead and have led to an adversary complaint that seeks damages against my client. And on the other hand, it claims that the adversary complaint that's the subject of this appeal is for non-pecuniary remedies. Now, Barden says that a case involving a breach of contract is not covered by 47B, and it doesn't apply 47B-2, which is the litigation Barden applies 47B-3, which is the privilege that applies in official proceedings. Now, if we look at the history of 47B-2, which is the litigation privilege, and we see the Supreme Court's action on that statute, we see the result in Silberg, which holds that misrepresentations are absolutely protected. We look at Rubin v. Green, which was decided three years later, which rejects an attempt to recharacterize conduct as resulting in a non-monetary remedy. When you say absolutely protected, what's the scope of that absolute protection? I can say that it might protect individuals from getting sued in second and third suits, but does it mean you can't use this kind of Yes. That's what it means. So I can lie, cheat, thieve, steal, and misrepresent, create, cause something to happen in a lawsuit, and nothing can be done about that because of the litigation privilege? I disagree with that, Your Honor, and let me explain why. I'm trying to grapple with the scope of what this means. The litigation privilege basically says when you're in a litigation setting, your remedy for false testimony, for misstatements, for problems with the evidence submitted by the other side is to ferret it out in the litigation itself. Okay. And that protects the people who do it from being sued, but does that also protect what was done as a result of all that behavior from being undone? It does. Where does it say that? If misrepresentations are the theory upon which a party would seek to unwind a contract, and that conduct creating the misrepresentations is absolutely privileged, then it follows that the contract must stand notwithstanding the misrepresentations. That's the teaching of the home savings or home insurance case. Is the privilege attached only to the persons who make the misstatements, or does it allure to the benefit of those on whose behalf the statements are made? It attaches. The answer is yes to both, Your Honor. It attaches to the person who makes the statement and it allures to the benefit of the person on whose behalf they are making the statement. So that if the appellant is correct that Bozen and Murphy were appearing on behalf of Marconi, that Marconi could avail himself of the privilege even though he did not make the misrepresentations? If that were correct, then yes, Your Honor. We take issue with that because Mr. Rosen on the record stated that he was appearing as special litigation counsel for the debtor. He was there for GHS. He was not there for Mr. Marconi. Mr. Marconi was separately represented at that hearing by a lawyer named Thompson Young, who made no statements at all at that hearing. Now, if I may, Your Honors, I'd like to address the dichotomy that's been addressed here between a tort action and a contract action. What we have is a series of cases starting with the California Supreme Court decision in Silbert, which clearly hold that misrepresentations, particularly by a lawyer during litigation, are covered by the absolute privilege. We have Rubin that tells us that you can't relabel your claim in order to avoid the effect of the absolute litigation privilege. We cited in our brief a case that carved out an exception to the misrepresentation scope within Silbert. That case was later overturned by the California legislature when it specifically acted to enact a specific exception for misrepresentations, and it now appears in Statute 47B-2. Now, the California Supreme Court acted before the California legislature enacted that exception. If the California legislature had wanted to carve out other misrepresentation exceptions, it would have acted at the same time. The reality is that it has not. So as the law stands today, the California Supreme Court has held that misrepresentations are covered by the privilege. It has never held that a contract claim is not covered by the privilege. And the cases that are cited by the appellant for the proposition that contract claims are not covered by the privilege are cases in which there is alleged a breach of contract. That's not this case. As the Court recognizes, this case is the first part of a two-step process. Why isn't this an easier case? A rescission is different from actual breach. We believe it's easier to apply the privilege here than in a breach case, Your Honor, because the gravamen of the complaint is misrepresentation. This whole proceeding is based upon a witness's testimony and a lawyer's argument in a contested matter in bankruptcy court. Those are quintessential litigation statements. They are not a contract which is meant to resolve and finalize the rights and liabilities of a party. Had this case been a breach of contract case, we wouldn't be talking about Silberg. We'd be talking about court of appeal decisions that seem to say that 47B-2 does not apply. I understand why it doesn't make sense to say, look, if you make one of these misrepresentations, we can't go after you. We can't punish you for it. You know, you can't be sued. You know, you might be subject to perjury or whatever, but we can't go after the declarant personally. But that has nothing to do with letting him or anybody else enjoy the benefits of the misrepresentation. That's a wholly different thing. It's a personal privilege. It keeps you protected from the consequences of having caught in a lie, but it doesn't give you the benefits. Why is that a perfectly plausible distinction that makes perfect sense? Just so I'm clear, Your Honor, you're suggesting that the supposed principle doesn't benefit from the privilege, while the lawyer, the actor, does benefit from the privilege. That's not what I said. I'm sorry, I misunderstood you. Okay, answer the question I asked. I'm sorry, I misunderstood you, Your Honor. Okay, so now answer the question I asked. I did not understand it. It's one thing to protect the person who made the representation. It's another thing to allow that person to benefit from the misrepresentation. Thank you. So why isn't that where you draw the line? We'll protect you, but we won't let you benefit. And so I take from not allowing to benefit. Why don't you just answer the question instead of asking more questions? I didn't know what question to ask. The supposed liability for the statement is as an agent. The lawyer acting for the principle, if the lawyer enjoys the benefit of the statement and supposedly creates the potential liability for the principle, the lawyer who enjoys the benefit should be allowed to pass that benefit along to his principle. Why? From a practical standpoint, as an advocate, if I'm appearing in a proceeding on behalf of my client. You've lied on behalf of your client and got something that the client wouldn't be entitled to if you hadn't lied. Okay, and we can't come after you, and that gives you the freedom to lie the next time, because, after all, that's what we expect lawyers to do. But we're sure as heck not going to let your client benefit from that lie. What's so discordant about that? The problem is that it creates a... It's just like with a criminal defendant. The lawyer goes home and goes to bed, and the client goes to jail. It creates a conflict in the attorney-client relationship. So then the lawyer ought not to lie. The problem, then, is it has a chilling effect upon the lawyer's behavior, because the lawyer who has lied on behalf of the client... Because he doesn't get as much benefit out of the lie than if he got... But so what? Why is that any concern of ours? We have a rule. We have something that under state laws is termed to be a privilege. And maybe the legislature could have made the privilege broader. Okay? But the question I ask, and the question you have failed to answer is, why is there a plausible distinction between saying, Look, you're a privilege. You can lie. We're not going to come after you. But your client, or you yourself, or anybody else does not get the benefit of that lie. Why is that not a plausible distinction, a plausible line that we should draw? Two reasons, Your Honor. First, it subverts the whole purpose for the privilege, which is to encourage lawyers to be zealous advocates. The lawyer who thinks that his client can be sued because of the lawyer's comments in court has a conflict. He will be thinking in the back of his head, How far can I go with my advocacy here? What will happen... I mean, we have ethics on top of ethics on top of ethics rules nowadays. You're supposed to always be thinking that. Lawyers are supposed to always be aware of that, aren't they? That is correct, Your Honor. And those are the remedies. It's not a later collateral attack. Do you have a better reason? Because I didn't like, I didn't find the first one at all satisfactory. The other reason is that litigation will never end. And that's precisely what the Silberg Court talks about. Unless you force litigants to vet the evidence in the statements in the proceeding, whenever someone has a result that they later decide is unsatisfactory to them, they will find a way to accuse a lawyer or a witness or some other participant of a falsehood. And they will sue for rescission. Well, Rule 11 protects against phony accusations, doesn't it? And other devices that we have in federal courts? That's true. If somebody were not speaking on behalf of Marconi, then what happens? Is it essential to the appellant's case to show that they were speaking on his behalf? Yes. So that a stranger in a proceeding lies, and that lie becomes critical to the outcome. That cannot be used as a basis to upset whatever benefit the other party had. Is that right? That is true as well, Your Honor, because all participants in litigation are protected by the privilege. The rule is such, if I may. I'm sorry. I'm not sure I follow this litigation rule. I've never heard this rule before. Does every state have it? Does it exist in federal court? What? It does not exist in federal court in the form that exists in California. And I do not know whether it exists. And somehow federal litigation does eventually come to an end. Even without this rule. So, you know, this idea that somehow if you don't have this rule, you know, you'll sort of take out the lynchpin, the whole cart of the judicial system will go off the tracks just doesn't, you know, it's fantasy. I mean, do other states have this rule? I'm unaware, Your Honor. I'd never heard of this before. So it can't be that important a rule. It's not that crucial. Well, it certainly is. Do you have a third reason? With respect to the privilege? Yeah. No, Your Honor. I think we've argued the different reasons. If I may address standing real quickly. The appellant takes the position that the appellant's rights spring from the fact that the appellant has received all of the estate's rights. The record is clear that the complaint in this case is a complaint by the creditor's committee, not by the estates. The record is also clear that the estates never intervened in the binding term sheet complaint. Well, but the creditor's committee is acting on behalf of the estate. We know that. Yes. But this is not an asset of the estate. It's an asset of the creditor's committee. It was filed only by the creditor's committee. The trustee never intervened, never sought to argue in opposition to the motion to dismiss. The creditor's committee is acting on behalf of the estate. They don't have any independent assets. Their only existence is to represent the creditors in this bankruptcy. Is that wrong? No, it's not, and I'm not suggesting that it is. If they recover, you mean they get to go off with the recovery on their own and the estate sees none of it? No, that's not what I'm suggesting. What happens if they recover? Where does the recovery go? If they recover on the other adversary complaint that has been alluded to today, that would be an asset of the estate. I'm referring to the rescission complaint to rescind the binding term sheet. That was filed by the creditor's committee. Isn't that an intermediate step to the recovery on behalf of the estate? No, Your Honor. Why not? Because it was an action by the creditor's committee, not the estate. The estate had knowledge of that complaint, did not join in it, did not argue against the dismissal, did not join in the appeal to the district court. Did not run up a lot of useless attorney's fees. Well, it didn't take a position in the case. And so what? And so the consequence is... So what happens if they win? If they win this appeal, then the case is back in the bankruptcy court, and we have a plaintiff that doesn't exist, because the creditor's committee was disbanded. So why are you spending money opposing it? Because you have a nonexistent plaintiff you have nothing to worry about. Why is your client spending money to pay you to be here? Because... Obviously you're worried about something. It won't be the end of it, Your Honor. Why not? Because there will be some effort for the appellant, the creditor's trust, to claim that it's the holder of this claim. And if not... And if they succeed, what happens? Well, if that's the final result... Do they just walk off with the money? If that's the final result, then they will... Do they walk off with the money? No, they will be allowed to pursue a rescission claim. On behalf of whom? Well, on behalf of the creditor's committee. And where does the money go if they're successful? I don't know the answer to that question. Switzerland. Don't know the answer. But it wouldn't be on behalf of the debtors. Oh, come on. You undermine your credibility when you say stuff like that. But, Your Honor, I don't know, because I don't know how it's going to be claimed. Take a guess. They're going to claim that it's... Give us a guess. They will claim that it's an asset of the estate. Oh! Amazing. And you won't be surprised to hear that. No, I won't. Okay. So why are you being so cagey? I'm not trying to be, Your Honor. But you are. Well, I apologize if you take it that way. I do. We're just trying to figure the damn thing out. You know, that's the thing... I understand. They play cat and mouse games. And they play cat and mouse, and we're just trying to get to the bottom line. And it's not helpful. If the money goes anywhere, it goes to the estate. That's true. There we go. There we go. That's true. That's why we're like, what are you talking about? We're going to have to pull teeth to get that out of you. I agree. And I think I misunderstood because I'm focused on the rescission claim as opposed to the claim for damages. But I do agree that the binding term sheet complaint actually refers to suing Mr. Marconi for $40 million in damages. So it does dovetail into the argument that this really is a claim based on misrepresentations for a monetary remedy. Okay. Thank you. Thank you, Your Honor. The case is argued. We'll stand some minutes. We'll take a recess. Do you want to... I have two points, but only if the Court is interested. I'm not. It's up to you. One no. I'll make two brief points. I should let you know that I've seen cases lost on rebuttal. I understand that, Your Honor. Go ahead. I haven't seen any cases won on rebuttal. I heard two noes. I heard one no and two silence, so I'll take that as perhaps that I should... Go for it. Thank you. Two brief points. The first point. The term sheet has contract provisions beyond just the release, including an indemnity in favor of Mr. Marconi, meaning there really are pure contract issues. It is not just a tort claim in disguise. That was one point. The second point is that Section 47 was originally a defamation statute. It's been expanded beyond defamation by the California courts, but I don't think the California courts can extend a defamation statute to basically drive an enormous hole in Rule 60b-3 and prevent what the bankruptcy court thought, which is the bankruptcy court assumed that 47 essentially did not allow it to take into consideration fraudulent representations made to the court. I have nothing further, Your Honor. Okay. Thank you. Case argued and submitted. We will take a recess before we hear argument in the last case. All rise. This Court shall stand in recess. Thank you.
judges: Kozinski, Trott, Sand